STATE OF CONNECTICUT *v.* ANTHONY PROCCE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 2-31890

Argued October 28, 1968—decided February 14, 1969

*Charles Hanken,* of Bridgeport, for the appellant (defendant).

*John P. Evans,* chief prosecuting attorney, for the appellee (state).

DEARINGTON, J. The defendant, having been convicted of a violation of § 53-298 of the General Statutes, has appealed from the judgment. Before the trial the defendant made certain motions, including motions to dismiss the complaint and suppress certain evidence on the grounds that the search warrant in possession of the arresting officer was illegally

issued and further that § 54-33b was unconstitutional. The motions were denied at a preliminary hearing and exceptions were taken. There are two findings, one related to the hearing and the other related to the trial. The defendant assigns error in the substance of both findings, but no correction of the subordinate facts or conclusions in either finding can be made which would be of advantage to the defendant. The assignments of error basic to the appeal are set forth in the defendant's brief and relate to claims that § 54-33b is unconstitutional and to the court's ruling on evidence.[1] Since these are the only assignments of error pursued in the brief, we treat the others appearing in the assignments of error as having been abandoned. *State* v. *Jones,* 124 Conn. 664, 665; Maltbie, Conn. App. Proc. § 327.

Under the assignment of error relating to the court's ruling on certain evidence, the defendant again raised the question of the legality of the search warrant, claiming that the supporting affidavits lacked adequate probable cause. See *State* v. *Mariano,* 152 Conn. 85, 91, cert. denied, 380 U.S. 943. While such a claim might have been assigned as error and briefed under a separate heading, we review it at this posture of the opinion. At the hearing, the defendant was unsuccessful in moving to dismiss the information on the ground that it was predicated on an improper issuance of a search warrant. The defendant had the burden of proof on the motion. Ibid.

---

[1] The defendant's assignments of error as set forth in his brief are as follows: I. The court erred in failing to correct the special finding and finding in the manner set forth in appellant's motion to correct special finding and finding. II. The court erred in admitting into evidence the fruits of the illegal search and arrest of appellant. III. Section 54-33b of the General Statutes violates the fourth and fourteenth amendments to the United States constitution and article first, §§ 8 and 9, of the constitution of Connecticut because it authorizes an unreasonable search and seizure.

From the evidence introduced at the hearing the court found as follows: The Bridgeport police department received information from an informant, who had given reliable and accurate information in the past, that policy playing activities were being conducted at Mike's Variety Store, 1515 Main Street, Bridgeport. The police were further informed that a known gambler, Michael Albanese, who had been previously convicted for policy playing, operated that store. A surveillance of the store was made by the police on three days during normal gambling hours, and on each such day the defendant was observed in the store. While the police did not know the defendant by name, he was known to them, as a result of two previous raids, to have a reputation for gambling. The surveillance conducted during the late morning and early afternoon also revealed that many people, including known and reputed gamblers, entered the store and few left with visible items of purchase. As a result of such evidence, all of which was set forth in affidavits which are included in and made a part of the finding, a search warrant was issued on October 6, 1967 (two days after the final surveillance), ordering a search of the store and including the person of Michael Albanese, for the purpose of seizing certain gambling material, as is more fully set forth in the warrant. On that day Detective Bennett, accompanied by three officers, approached the location of the store. The defendant was observed leaving the store, walking to a truck, and removing something and then returning to the store. The officers entered the store. Michael Albanese was not in the store and the defendant was behind the counter near the cash register and in charge of the store. The detective identified himself and the search warrant was given to the defendant to examine. While the defendant was examining the search warrant, his

clothing was searched and two pieces of paper allegedly containing forty-four policy plays totaling $27.25 were found in one pocket, together with currency amounting to $321. The defendant offered no objection to the search of his person. He was thereupon arrested for violation of the policy playing statute. The police also seized from a counter one package of Desolvo (milk paper) and a green-colored booklet entitled "The H. P. Dream Book."

The essential elements necessary to establish probable cause in the issuance of a search warrant have been thoroughly reviewed by our Supreme Court. See such cases as *State* v. *Allen,* 155 Conn. 385, 391; *State* v. *DeNegris,* 153 Conn. 5, 9. If the standards set forth in such cases are here applied, we are satisfied that the search warrant was legally issued, since the affidavits sufficiently asserted a reasonable belief in the existence of probable cause and the court's conclusion in this respect was justified. The court further concluded that the search of the defendant's person was in accordance with § 54-33b of the General Statutes and that the property seized was within the purview of the property described in the search warrant, and, furthermore, that no warrant was actually required for the search and seizure of this property nor the subsequent arrest of the defendant. Following the hearing, motions to quash, dismiss, discharge the defendant, return the property and suppress the evidence were denied.

In the trial that followed the hearing, the defendant again made the identical claims on the same grounds. The court's rulings were adverse to the defendant. "Where a matter has already been put in issue, heard and ruled on pursuant to a motion to suppress, the court on the subsequent trial, although not conclusively bound by the prior ruling, may, if it is of the opinion that the issue was correctly decided, properly treat it as the law of the case, in

the absence of some new or overriding circumstance." *State* v. *Mariano,* supra. The basic question raised by the defendant at both the hearing and the trial relates to his claim that § 54-33b is unconstitutional.

In considering the constitutionality of § 54-33b, it should be recognized that "[c]ourts in passing upon the validity of a legislative Act do not feel justified in declaring a law void, unless there is a 'clear and unequivocal breach of the Constitution, not a doubtful and argumentative implication.' . . . 'It is our duty to approach the question with great caution, examine it with infinite care, make every presumption and intendment in its favor, and sustain the Act unless its invalidity is, in our judgment, beyond a reasonable doubt.'" *State* v. *Lay,* 86 Conn. 141, 145. Nor can we impute to the General Assembly an intent to pass an invalid act or antagonistic legislation. *Wilson* v. *West Haven,* 142 Conn. 646, 656. Moreover, "[a]n intent on the part of the legislature to enact a law of such doubtful constitutionality is not readily to be inferred." *Antman* v. *Connecticut Light & Power Co.,* 117 Conn. 230, 237. Furthermore, this court should declare a statutory provision unconstitutional only upon the clearest ground; particularly is this so where the statute turns on what is "reasonable."

Section 54-33b was enacted at the 1963 session of the General Assembly following the repeal of § 54-34, from which it was derived. These statutes relate to search warrants in situations involving gambling and lottery implements. The former statute provided that the officer serving the warrant may, if he has reason to believe that gambling paraphernalia is concealed in the garments of any person named in the warrant, "search the garments of such person for the purpose of seizing the same." The present statute, however, extends the search to the

garments of any person in or upon the place named in the search warrant, "if . . . [the officer] has reason to believe that any of the property described in such warrant is concealed in the garments of any person . . . ." For the legislative history of this statute, see *State* v. *Certain Contraceptive Materials,* 126 Conn. 428, 433. In the instant case, the search warrant directed the officer to enter and search for certain gambling paraphernalia, inter alia, "policy bets," located at "Mike's Variety Store, 1515 Main Street, Bridgeport . . . and also the person of Michael Albanese." The defendant contends that since the warrant did not describe him by name the search of his garments was unreasonable and § 54-33b, purporting to authorize such a search, invaded his constitutional rights.

The right of people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures is a fundamental right guaranteed by both the federal and state constitutions. It is grounded on the tradition of English jurisprudence. The fourth amendment to the federal constitution provides as follows: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Our state constitution in article first, § 7, contains a similar provision.

"The immunity provided by the constitutional guaranties is not from all searches and seizures, but from unreasonable searches and seizures only." 47 Am. Jur. 531, Searches and Seizures, § 52. Only unreasonable searches and seizures come within the interdict of the constitution. *Mapp* v. *Ohio,* 367 U.S. 643; *Harris* v. *United States,* 331 U.S. 145; *State*

v. *Mariano,* supra, 93; *Pickett* v. *Marcucci's Liquors & Containers,* 112 Conn. 169, 173. The test is whether the statutory provision under review is compatible with the constitutional requirements as the statute relates to "reasonableness." In *Ker* v. *California,* 374 U.S. 23, 34, the court said, in applying "reasonableness" under the fourth amendment: "The States are not thereby precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain." See *State* v. *Licari,* 153 Conn. 127, 133; *State* v. *Mariano,* supra, 94. "In passing upon the issue of reasonableness, the importance of public benefit, which the legislature had in mind, is to be balanced against the seriousness of the restriction of private rights guaranteed by the constitution." *State* v. *Darwin,* 25 Conn. Sup. 153, 158.

The search of one's garments under § 54-33b is severely restrictive, and certain conditions precedent must exist before it can be made. First, there must be a valid search warrant which provides for a lawful entry on the property, the indispensable predicate of a reasonable search. *State* v. *Elliott,* 153 Conn. 147, 152. Under the provisions of the statute, a search warrant was required although the premises were a store open to the public. Second, the property directed to be seized must be adequately described in the warrant, and such property is limited to gambling material. Third, the person searched must be present in or upon the place set forth in the warrant. Fourth, such search can be made only if the officer has "reason to believe" that

such property is concealed in the garments. The defendant does not question the validity of the search warrant, relating, as it does, to a description of the premises as well as to a description of the material to be seized. He does, however, contend that "reason to believe" to mean "probable cause." 47 Am. Jur., Searches and Seizures, § 22; see Ballentine, Law Dictionary (2d Ed.), "probable cause." Thus, the statute does not provide for a general search or one conducted on mere suspicion, either of which would be unreasonable both under the statute and the constitution. *Stanford* v. *Texas,* 379 U.S. 476; *State* v. *Towry,* 26 Conn. Sup. 35, 37.

Probable cause exists under § 54-33b when the "circumstances observed by the officer preceding the arrest, viewed in the light of common knowledge and his own training and experience, gave him probable cause to believe that a crime was being, or had just been, committed." *State* v. *DelVecchio,* 149 Conn. 567, 575, and cases cited; *State* v. *Reynolds,* 101 Conn. 224, 229; 5 Am. Jur. 2d, Arrest, § 44. It " 'implies an offender and an act of offense which is not in the past.' " *State* v. *DelVecchio,* supra. Whether such an offense is a misdemeanor or a felony in this situation is not controlling. See *State* v. *Elliott,* supra, 151–52; *State* v. *DelVecchio,* supra, 574; *State* v. *Carroll,* 131 Conn. 224, 228; *Price* v. *Tehan,* 84 Conn. 164, 167. However, an actual search or an arrest based solely upon probable cause is not justified merely upon the information of others; it must be predicated upon facts within the knowledge of the officer making the search or the arrest. 5 Am. Jur. 2d, Arrest, § 32. We construe the statute to provide for an "on sight" or "on view" search based on "probable cause." The statute in effect codifies the existing law after a lawful entry has been made and the additional conditions of the statute, already considered, have come

into operation. When the statute is considered in this light, we conclude that the provisions of § 54-33b are not violative of the defendant's constitutional rights and the court committed no error in so holding.

The defendant relies on such cases as *United States* v. *Di Re,* 332 U.S. 581, *United States* v. *Festa,* 192 F. Sup. 160, *Thurman* v. *State,* 116 Fla. 426, and *Polk* v. *State,* 167 Miss. 506, to support his contention that § 54-33b is unconstitutional and therefore any search as provided therein transgresses constitutional guarantees. These cases are distinguishable from the instant case, turning as it does on the construction of a statute. In *Di Re,* the Supreme Court of the United States held that officers lacking a warrant were not justified in searching an occupant of an automobile, notwithstanding they had reasonable cause to believe that there was contraband in the automobile in the form of counterfeit gasoline ration coupons, for there was no probable cause to believe that the occupant was involved in any conspiracy which the officers believed had been or was being committed. In *Festa* the court, adhering to the rule in *Di Re,* held that a search warrant for a particular building does not authorize a general search of all the persons found in it. In *Thurman* and in *Polk* it was held that gambling statutes authorizing forcible entry, without a warrant, into a house or other place, upon a belief that gambling was being carried on therein, were unconstitutional.

The defendant further contends that the search of his garments was illegal because it preceded rather than followed his arrest. " '[I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . . there is nothing unreasonable in his conduct if he makes

the search before instead of after the arrest. . . .
[T]he important considerations are whether the
officer had reasonable cause before the search to
make an arrest and whether the search and any
seizures incident thereto were or were not more
extensive than would reasonably be justified as inci-
dent to an arrest.'" *State* v. *Elliott,* supra, 154;
note, 89 A.L.R.2d 780 § 7. It might be added that
the court said in *State* v. *Mariano,* supra, 97: "It
is significant that the search warrant authorized a
search for gambling papers, which are subject to
easy destruction . . . ." This fact is demonstrated
by the seizure of a package of Desolvo paper found
on the premises and introduced as an exhibit; the
trial court found, on placing a piece of it in water,
that it instantly dissolved. We are satisfied, as was
the trial court, that an arrest which follows a search
is not unlawful if the arrest is justified prior to the
search, the search is not unreasonably conducted,
and both occur at approximately the same time.
*State* v. *Reynolds,* supra, 229–30.

Finally, the defendant claims error in the admis-
sion during the trial of two slips, consisting of
Desolvo paper, on which purported policy numbers
were listed. The defendant, however, has failed to
comply with § 989 (4) of the Practice Book. When
an error is claimed in the admission or rejection of
evidence, the appellant is required to set forth in an
exhibit annexed to his assignment of errors "the
question, the objection, the answer, if any, and the
exception." *State* v. *Church,* 4 Conn. Cir. Ct. 220,
225; see Practice Book, Form 819 (B) (4). This
the defendant failed to do, and thus this assignment
of error is not properly before us.

There is no error.

In this opinion WISE and MACDONALD, Js., con-
curred.