STATE *vs.* CHESTER G. JEFFERDS.

JUNE 29, 1960.

PRESENT: Condon, C. J., Roberts, Paolino and Frost, JJ.

ROBERTS, J. After our opinion herein was filed, *State* v.

*Jefferds*, 89 R. I. 272, 152 A.2d 231, the defendant by permission of the court presented a motion for leave to reargue. We granted this motion in our opinion, *State* v. *Jefferds*, 89 R. I. 282, 152 A.2d 236, wherein we stated: "Upon consideration we are of the opinion that the question raised under point 3 in his reasons in support of his motion for reargument raises an issue of sufficient importance to make it advisable to hear further arguments thereon. However, such arguments shall be limited to that point only."

The defendant contends under point 3 that it is impossible to raise before this court the impropriety of the M'Naghten Rule. The reasons set out by him in support of such contention appear to be based upon an assumption that under our trial procedure a defendant who has raised the defense of insanity is unable to require the trial court to pass upon either the validity or availability of any test for determining the criminal responsibility of the mentally ill other than that which we approved and followed in *State* v. *Andrews*, 86 R. I. 341, 134 A.2d 425.

The test which the jury was instructed to apply in that case, as we stated therein, was in substance the test that inheres in the M'Naghten Rule. That test, sometimes referred to as the "right and wrong" rule, requires a determination of the criminal responsibility of a defendant on the basis of whether at the time of the commission of the act he had the mental capacity to know the wrongful nature of what he was doing. We gave definite approval to this test in the *Andrews* case when we stated, "The rule of responsibility when a defendant has the capacity to know the difference between right and wrong seems to us a sound rule and one particularly adapted to the administration of criminal justice."

After asserting such reasons, which will hereinafter be more fully considered, defendant concludes that the validity of the M'Naghten Rule can be attacked in this jurisdiction only by taking an exception to an instruction given

the jury that it is to apply such test to the facts in evidence relevant to the defense. He asserts that thereafter, in prosecuting the exception, he properly may request this court to formulate and adopt some test for determining criminal responsibility in these cases other than the M'Naghten Rule, so called.

There is no merit in defendant's claim that under our trial procedure he is unable to require the trial justice to rule upon either the validity or the availability of any test for determining the criminal responsibility of the mentally ill other than that which is inherent in the M'Naghten Rule. It is clear from the record that defendant made no attempt to require the trial justice to so rule at any time during the course of the trial. We direct attention to this fact because by discussing it now it is not our intention to establish a precedent for the presentation to us of questions that were not raised at the trial, made the subject of exceptions of record, and brought to this court by an appropriate bill of exceptions.

It cannot be questioned that defendant, at any time during the trial, could have introduced into evidence the testimony of competent and qualified witnesses tending to prove the validity and availability of any of the tests for determining criminal responsibility that have been given judicial recognition in this country. For that matter, testimony as to the validity and availability of such a test that has not been given judicial recognition could be offered. If, upon objection thereto, the trial justice excluded that testimony, defendant could make an offer of proof for the record and take exception to the exclusion of the evidence. Thereafter, by prosecuting such exception to this court, the question would have been raised whether the exclusion of that testimony, in the circumstances, constituted prejudicial error.

If, on the other hand, such testimony was admitted in evidence either without objection or over objection, the de-

fendant could at the proper time request that the jury be instructed to apply to the evidence relevant to the issue of insanity the test for criminal responsibility that was postulated by the evidence adduced by the experts. From a denial of the request for such an instruction, an exception would lie and a prosecution thereof to this court would raise the question whether it was error to refuse to instruct the jury to apply the test formulated in the requested instruction.

It is true that under such procedure the defendant is required to obtain competent and qualified expert witnesses and through them to present to the court evidence probative of the validity of the test proposed. However burdensome that may be, insanity is an affirmative defense in this state, and in order to obtain an acquittal the burden is on him to prove such defense by a fair preponderance of the credible evidence.

There is no merit in the contention that a defendant, who has raised the issue of insanity and has excepted to an instruction to apply the test that inheres in the M'Naghten Rule, cannot in any circumstance challenge the validity of such test under that exception. If the issue of the validity of that test had been raised below, the exception taken to an instruction that the jury apply it in their deliberations would suffice to permit the raising of that issue in this court. In other words, the availability of that issue under the exception taken depends upon whether the record reveals that the validity of the test was subjected to attack during the trial.

Therefore, we do not perceive that the attack by defendant on the test which inheres in the M'Naghten Rule under his exception to an instruction charging the jury to apply that test would avail him anything in the state of the evidence here. Conceding that where the record contains relevant evidence a defendant may, under such an exception, attack the test inherent in the M'Naghten Rule, that attack

in this case would be little more than a gesture, for there is in this record no evidence which is probative of either the inadequacy or the unreliability of that test as a device for determining the criminal responsibility of the mentally ill.

An examination of the language used by defendant in subparagraph D of point 3 in his reasons urged in support of his petition for leave to reargue reveals the precise nature of the decision that we are asked to make. The defendant therein states that he seeks "to have this court *establish another rule* which may thereafter be used \* \* \*." (italics ours) In other words, defendant asks us to undertake, sua sponte, to formulate and adopt some test for the determination of the criminal responsibility of the mentally ill other than that prescribed in the M'Naghten Rule and long adhered to by this court.

The record in the case is completely barren of evidence that is probative either of the invalidity of the rule in the *M'Naghten* case or of the validity and availability of a different test. The defendant appears to propose that we base such a decision upon an analysis of tests which differ from that inherent in the M'Naghten Rule and have been adopted by other jurisdictions, and upon the persuasiveness of learned articles which discuss certain tests that have from time to time been published in divers scientific journals. We will not make such a decision in the circumstances here.

It is not our intention to ignore the increasing fund of knowledge concerning mental illness that is emerging through the labors of those engaged in research in this field. It may be that increased psychiatric "know-how" has raised a serious question of the existence of infirmities in prior concepts concerning the criminal responsibility of the mentally ill. We do not assume that the test for such responsibility to which we presently adhere is the only reasonable test. If it is shown to be inadequate and unreliable, of course we will not adhere to it.

However, we will not abandon or discard that test and substitute another therefor, the validity of which has been established purely on the basis of hypothesis and conjecture. We will consider the substitution of another test for that now in effect only upon being supplied with competent evidence tending to establish its validity. Ordinarily we would expect such evidence to be adduced by the clear and convincing testimony of witnesses whose qualifications as experts in this field are substantial. We would insist that such testimony should be elicited from witnesses within the framework of our judicial process and in conformity to the established rules of evidence. There is no such evidence here.

If there were such evidence and, after an analysis and evaluation thereof, we were persuaded that there is available to this court a test for determining the criminal responsibility of the mentally ill of greater efficiency and reliability than that to which we now resort, we would without hesitation be inclined to adopt such test and establish it by rule. It is our intention to conform to our obligation in these premises to the best of our ability and thereby to make substantial justice available to the mentally ill charged with criminal acts so far as that may be accomplished consistent with the preservation of the security of the public.

Hence we are of the opinion that in the circumstances the defendant's exception to the instruction on insanity given by the trial justice raised only the issue as to the correctness of that instruction in stating the law in effect in this state at that time. No other issue could properly be considered by us on the record presented and the state of the evidence therein.

For the above reasons we see no necessity for changing our conclusion, and the case is remitted to the superior court for further proceedings in accordance with our original opinion.

CONDON, C. J., concurs in the result.

*J. Joseph Nugent,* Attorney General, *Edward F. J. Dwyer, Raymond J. Pettine,* Assistant Attorneys General, for State.

*Aram A. Arabian,* Public Defender, for defendant.