**STATE of Minnesota, Appellant,**

v.

**Glen W. LIEDER, Respondent.**

**STATE of Minnesota, Appellant,**

v.

**Kimberly Ann TESSMER, nka Kimberly Forst, Respondent.**

**No. C5–89–1396.**

Court of Appeals of Minnesota.

Dec. 26, 1989.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, W.M. Gustafson, Nicollet County Atty., Michael K. Riley, Asst. County Atty., St. Peter, for appellant.

Kelton Gage, Bailey W. Blethen, Blethen, Gage & Krause, Mankato, for Glen W. Lieder.

Lawrence W. Pry, Asst. State Public Defender, St. Paul, Robert J. Winzenburg, Mankato, for Kimberly Ann Tessmer, nka Kimberly Forst.

Heard, considered and decided by SHORT, P.J., and RANDALL and STONE *, JJ.

## OPINION

SHORT, Judge.

The state appeals a pre-trial order suppressing evidence and dismissing criminal complaints against both respondents. We affirm.

## FACTS

In May of 1988, the Brown County Police Department received a tip from an informant that respondent Glen Lieder would receive controlled substances by mail from California. In December of 1988, the informant told the Brown County police that Lieder would receive a package from California in the near future containing cocaine, delivered by either United States Mail or the United Parcel Service (UPS). The police contacted the UPS and told it to be on the lookout for a package addressed to Lieder coming from California. The police did not inform the UPS of the suspected contents of the package.

On January 25, 1989, the package arrived at the UPS. On its face, the package did not violate any UPS rule or policy. The UPS called the police, stating it would hold the package until the police came to the UPS facility. Upon arriving, the police asked the UPS to determine who sent the package. The UPS discovered the package originated from a business named Pacific Auto, but that no Pacific Auto actually existed at the return address. Further, the zip code accompanying the return address did not match the city of the return address.

The police then told Keith Jones, the manager of the UPS facility, that they believed the package contained cocaine, narcotics, or other illegal substances. Jones told the police he was authorized by his superiors to open the package if it contained illegal substances because UPS had a policy against transporting contraband. Under this policy, UPS will open any package it believes to contain illegal substances.

The police then brought in a specially trained dog to see if it could detect illegal substances by sniffing the package. The dog failed to detect illegal substances. Jones then determined that he would open the package. Jones testified at the hearing that the sole basis for his determination to

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

open the package was the suspicions of the police.

A search warrant was never sought nor issued to allow the police to open the package. The police did not specifically request that Jones open the package, nor did they assist him in opening the package. The police were present, however, when Jones opened the package. The package contained cocaine.

Based upon the informant's tip, the suspicious origin of the package, and the cocaine in the package, the police obtained a warrant to search Lieder's home. Both Lieder and respondent Kimberly Ann Tessmer were present in Lieder's home during the execution of the warrant by the police. Tessmer's purse was opened and searched. The police found cocaine in the purse. Additional drugs were found in Lieder's home. Both Lieder and Tessmer were placed under arrest and charged with violating various state laws against the possession and sale of drugs.

The trial court found that the UPS manager, Jones, did not act independently of the police, but in fact acted at the instigation of the police, and for the purpose of assisting the police. The trial court determined that the UPS and the police entered a joint enterprise when investigating and opening the package addressed to Lieder. Because the package was opened under these circumstances without a search warrant, the trial court found the search violated Lieder's constitutional rights.

The trial court then found that without the contents of the package, there was insufficient evidence to find probable cause to obtain a search warrant for Lieder's home. Without probable cause, the search warrant for Lieder's home was invalid, and thus, the entire search of Lieder's home, including the search of Tessmer's purse, was illegal. The trial court suppressed the evidence obtained from the search of both the package and Lieder's home.

Without this evidence, as the state admits, there was insufficient evidence to prosecute either Lieder or Tessmer. Accordingly, the trial court dismissed the complaints against both Lieder and Tess-

mer. The state now appeals the trial court's order.

## ISSUES

I. Did the trial court err in finding a warrantless search of a package by a UPS employee was unlawful?

II. Did the trial court err in finding the search warrant invalid?

## ANALYSIS

The trial court's pre-trial findings should be reversed only if the state clearly and unequivocally demonstrates that the trial court erred in its judgment and that, if not reversed, the error will have a critical impact on the outcome of the trial. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 547 (Minn.1987).

### I.

Both article 1, section 10 of the Minnesota Constitution and the fourth amendment to the United States Constitution prohibit warrantless searches by the government. "[T]he Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative * * *." *Skinner v. Railway Labor Executives' Association,* —— U.S. ——, ——, 109 S.Ct. 1402, 1411, 103 L.Ed.2d 639 (1989). Accordingly, a private, non-governmental person or entity cannot violate an individual's fourth amendment rights, *see* ·*Burdeau v. McDowell,* 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921), and evidence obtained by a private search and seizure is not subject to the exclusionary rule. *United States v. Haes,* 551 F.2d 767, 770 (8th Cir.1977).

"[W]here a search is physically conducted by a private individual but only at the government's initiation and under their guidance it is not a private search." *Id.* "The government may not do, through a private individual, that which it is otherwise forbidden to do." *United States v. Feffer,* 831 F.2d 734, 737 (7th Cir.1987). Before a citizen can be deemed to be an instrument of the state, "[t]he government must be involved either directly as a partic-

ipant or indirectly as an encourager of the private citizen's actions." *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981).

> Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, * * * a question that can only be resolved "in light of all the circumstances."

*Skinner*, —— U.S. at ——, 109 S.Ct. at 1411. Each case must be decided upon its own specific facts consistent with the principles of the fourth amendment. ' *Walther*, 652 F.2d at 791.

Two critical factors distinguish private and governmental searches: first, whether the government knew of and acquiesced in the search; second, whether the private party's purpose for conducting the search was to assist police efforts or to further the party's own ends. *Feffer*, 831 F.2d at 739.

The package gave no outward indication that it contained illegal substances or that it violated the UPS rules or policy. The police told the UPS to look for and hold the package. The police initiated the search for the return addressee, resulting in the discovery that the return address was nonexistent or incorrect. The police told Jones they suspected the package contained narcotics. Jones would not have been suspicious of the package, nor would he have opened the package, but for the conduct of the police. Further, the police remained at the UPS facility and were present when Jones opened the package. We conclude the search of the package was a public search because the police aroused the suspicions of the UPS and encouraged the UPS to open the package.

The state argues the search was private because the police neither asked Jones to open the package nor assisted him in any way in opening the package. That the police did not compel Jones to perform a search does not, by itself, establish that the search is a private one. *Skinner*, —— U.S. at ——, 109 S.Ct. at 1411. While it is true Jones physically opened the package, the impetus to do so came directly from the police. Further, the police were highly involved in the search.

■ We do not hold that a search of a package by a carrier is a public search merely because the police asked the carrier to intercept the package. We hold that a search is public where the carrier actively sought to assist the police after overt police involvement, police-initiated suspicion, and police encouragement. Thus, we affirm the trial court.

## II.

Under the derivative evidence rule, incriminating evidence "discovered by exploiting a previous illegality is inadmissible." *State v. Jensen*, 349 N.W.2d 317, 321 (Minn.Ct.App.1984); *see also State v. Mathison*, 263 N.W.2d 61, 63 (Minn.1978). Since the search of the package violated Lieder's constitutional rights, the evidence discovered in that search cannot be used to support a finding of probable cause to issue a search warrant for Lieder's home.

■ The state argues that even without the illegally obtained evidence, sufficient probable cause existed to justify issuing a search warrant for Lieder's home. We disagree. Probable cause is determined under a totality of the circumstances test. *State v. Wiley*, 366 N.W.2d 265, 268·(Minn.1985). After omitting the evidence obtained in the illegal search, the only information remaining to support a finding of probable cause to search Lieder's home was: (1) a tip that Lieder was going to receive a package, containing cocaine, from California through the mail or the UPS; (2) the arrival of a package from California, addressed to Lieder, at a UPS station; and (3) the fact that the return address on the package was incorrect or nonexistent.

The mere receipt of a package from California through the UPS certainly has no criminal implications. The fact that the package's origin was suspicious is no indication that Lieder's home might contain drugs. A tip that Lieder would receive a package of drugs is also no indication that there were additional drugs in his home.

 

Further, the supporting affidavit makes no mention of the informant's reliability. Under these circumstances, there was no probable cause to issue the search warrant for Lieder's home.

## DECISION

The warrantless opening and search of the package addressed to Lieder was a public search in violation of Lieder's constitutional rights. Without the evidence obtained in this illegal search, there was no probable cause to search Lieder's home. Thus, the evidence obtained from the search of both the package and the home, including Tessmer's purse, is inadmissible.

Affirmed.